Caruthers, J.,
delivered the opinion of the Court.
This bill is filed to settle the conflicting claim of *238 tbe parties to a tract of land, to which both claim title by deeds from Charles E. Kincheloe.
The deed to defendant, Jemima, when sole, was made 7th February, 1844, and registered March, 1844. The complainant’s deed is dated March, 1845, and was acknowledged and registered September, 1848. They were both made for the same .tract of land, and purported to be upon valuable consideration.
The then Sheriff of the county, G. W. Willet, states the facts in relation to the deed to Jemima. Charles E. Kincheloe, her brother, was in jail on a charge of felony, and had been confined for more than a year, not having been able to procure bail. While thus confined, he executed this deed to his sister, which was witnessed by Willet, and took her notes for $1,680, as the consideration. He then offered her as his bail, saying she was worth more than the amount required of him for bail. The witness refused to receive her upon the ground that the land being bound for the notes, she was worth no more than before. She was also rejected by the Court on the same ground. After this, she returned the deed to her brother, and destroyed her notes, stating that she could have no more to do with it, as it was all a fraud. About one year after this, the land was sold to complainant, Whillock, for a valuable consideration, and he was in possession. Before the registration of the deed to Whillock, Jemima married the defendant Grisham. Nothing has ever been paid by her or him for the land.
It is insisted, and this is the ground mainly upon *239 which, the Chancellor based his decree, that marriage being a valuable consideration, her intermarriage with John Grisham before registration of the deed to complainant, would validate the title. It is difficult to perceive how the doctrine on this subject can be applied to the present cáse. The facts do not raise the question argued. It does not appear that the deed was made to Jemima for the purpose of aiding her in marrying to advantage, or that she gained any credit with her suitor by the conveyance, or that he was in any degree influenced to marry her on that account. It is true, that a voluntary deed would cease to be so under the circumstances stated.—Whelon vs. Whelon, 3 Cowen, 579, and cases cited. But in the case under consideration, the deed is proved to have been made for a purpose entirely different — to . qualify her to become his bail, under an idea that a freeholder was necessary, and none other would be taken. It does not appear, either, that this deed in any way attracted or deceived the defendant, John, into the matrimonial alliance. If he knew any thing about its existence, the probability is, that he would also know that the purpose for which it was executed, had failed, and the whole contract cancelled so far as that could be done by the acts of his intended wife. To bring a case within the principle contended for, there must .be a constructive fraud at least upon the husband. There can be no pretense in this case that any fraud upon the marital rights' was practiced, or intended, by any one, and still less,, that the fact of marriage under the circumstances, can in the least affect the rights of the parties as to the title to this land. It is made *240 no better or worse, by the marriage of defendants. No consideration is supplied or excused, but the title of Jemima remains as it was before, whether good or bad. Her husband stands with her upon the rights she then had, unaided by the alliance.
What then, was the character of her title? First, It was entirely without any consideration paid. Second, It was communicated for a particular purpose, which failed; and, third, it was disavowed, as fraudulent, and cancelled, so far as it could be done by acts, and the consent of both parties, upon her application. She returned the deed, and took up and destroyed her notes for the feigned consideration. Under these circumstances, can her pretended title amount to more than a cloud, which a Court of Equity will remove? Certainly not. It is true, the deed to her was registered, and that no reconveyance has been made by her of equal solemnity. Yet, in a contest with a bona fide purchaser for valuable consideration, this is not always indispensable. The complainant is a purchaser for value, and though he may be affected with notice of the deed to Jemima, yet he also had. knowledge of the other facts above stated. It is not deemed necessary in this case, to discuss the vexed question of a contest between a voluntary deed and one subsequent, for valuable consideration, and under what circumstances the one will prevail over the other; nor whether a title once vested by deed, can be divested by parol. This case does not, in the view we take of it, require the agitation or consideration of those embarrassing questions.
It is enough for this case, that the deed to Jemima *241 was made distinctly, and avowedly for a particular purpose, that is, to enable her to become the bail of the vendor, which object entirely failed. And, secondly, that she declared herself, with the surrender of it, that the deed was fraudulent, and withdrew and destroyed the notes intended to have been given for the consid'eration. It cannot therefore, stand either as a gift, or sale, and can in no point of view, or upon any sound principle, be in the way of a subsequent 'bona Jide purchaser. After this she could not be heard in a Court of Equity to insist upon the validity of such deed, or rely upon such title. We do not see, however, that any fraud was intended when the deed was made, by either party. They had an idea that no one was competent to become bail in a criminal case, who was not a freeholder, and for that purpose the land was conveyed. So soon as this purpose failed, the parties regarded the transaction as at an end. It does, however, appear, that after that time, for several years, Kincheloe, on some occasions, pretended to act as tenant, or agent of said Jemima-, as if the transfer oí title had really been made, and was still consid■ered valid. But this was, unquestionably, a mere .pre-tence for certain objects of his own. She never considered herself the owner, after the return of the deed ■and the destruction of her notes.
Still, however, under some new lights in relation to their rights, the husband and wife brought an action of unlawful detainer against the complainant, who was in possession of said land under his purchase and deed from Kincheloe. To enjoin that suit, and clear away the eloud from his title, this .bill was .filed. We *242 think the prayer of the bill should have been granted',- and therefore reverse the decree.